**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROY BANKS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  03-56    (HHK/JMF)** |
| **OFFICE OF THE SENATE SERGEANT-AT-ARMS and DOORKEEPER,** | **Civil Action No.  03-686  (HHK/JMF)** |
| | **Civil Action No.  03-2080(HHK/JMF)** |
| **Defendant.** | |

**MEMORANDUM OPINION**

This case was referred by Judge Kennedy for full case management.  There are currently seven motions pending that I will now resolve.

I.      **BACKGROUND**

This is a Title VII action consisting of three consolidated brought by plaintiff, Roy Banks, against his former employer, the Office of the Senate Sergeant-at-Arms and Doorkeeper, alleging that:  (1) he was denied a promotion to branch manager because of his race; (2) he was retaliated against for seeking counseling with the Office of Compliance; (3) he was subjected to a hostile work environment based on his race, age, alleged disability, or sex; (4) he was discriminated against because of his sex; (5) he was denied leave under the Family and Medical Leave Act because of his sex, race, or the fact that he filed complaints of discrimination; (6) he was denied an accommodation for his disability; (7) he was denied disability leave; (8) he was terminated because of his race, age, alleged disability, sex, or in retaliation; and (9) defendant improperly handled his compensation claims. Banks v. Senate Sergeant-at-Arms, 222 F.R.D. 7, 9 (D.D.C. 2004).

II.     **DISCUSSION**

A.     **Procedural Posture**

The parties in this case have engaged in substantial litigation over the discovery process. Currently before the court are five additional discovery motions concerning the attorney-client privilege and work product doctrine.  Also before the court are two non-discovery motions brought by plaintiff: one concerning the redaction of previously filed motions and the other requesting leave to file a supplemental memorandum in support of a motion that has since been resolved.

B.     **Defendant's Motion for Protective Order and Plaintiff's Cross-Motion to Compel**

Defendant has moved the court for a protective order regarding questions asked at the depositions of K.C. and M.K., two employees of the Senate Sergeant-at-Arms. Defendant's Motion for and Memorandum in Support of a Protective Order ("Def.'s Mot. for Protective Order") at 2.  Specifically, plaintiff's counsel asked K.C. and M.K. about statements made by and to defendant's counsel during interviews and deposition preparation meetings. Id.  Defendant seeks a protective order on the ground that the answers to the questions would reveal work product and attorney-client privileged information. Id.  Plaintiff filed a cross-motion to compel answers to his questions arguing that defendant waived any privilege by not asserting a specific claim of privilege after each question posed and that defendant has not adequately shown that the answers would reveal work product or attorney-client privileged information. Plaintiff's Cross-Motion to Compel and Opposition ("Pl.'s Cross-Mot.") at 2-3; Plaintiff's Reply in Support of His Rule 37 Cross-Motion to Compel ("Pl.'s Reply") at 1-2.

1.      *Waiver*

As a threshold matter, plaintiff argues that defendant waived its privilege for many of the questions by not asserting a specific objection at the time the questions were asked. Pl.'s Reply at 1-2.  Rule 30 of the Federal Rules of Civil Procedure provides that, "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner," and that an attorney "may instruct a deponent not to answer only when necessary to preserve a privilege." Fed. R. Civ. P. 30(d)(1).  At both depositions, defendant's counsel expressly objected to the questions at issue on attorney-client privilege and work product grounds at the beginning of plaintiff's line of questioning. Def.'s Mot. for Protective Order, Exh. A at 10-12; Pl.'s Cross-Mot., Exh. A at 2-4.  For the remaining questions, defendant's counsel either objected by stating that he was making the "same objection" or instructed the witness not to answer. Def.'s Mot. for Protective Order, Exh. A at 17, 82-84; Pl.'s Cross-Mot., Exh. A at 2-7.  Furthermore, as reflected in the deposition transcripts, counsel engaged in extensive discussions regarding defendant's attorney-client and work product objections. See Def.'s Mot. for Protective Order, Exh. A at 10-15; Pl.'s Cross-Mot., Exh. A at 2-7.  The parties even called chambers during K.C.'s deposition in an attempt to have the court resolve defendant's objections. Def.'s Mot. for Protective Order, Exh. A at 12-16.

Taking together defendant's explicit objections, defendant's instruction to M.K. and K.C. not to answer in light of Rule 30, and the extensive discussion between counsel regarding defendant's objections, this court finds that defendant's objections were sufficiently clear. Accordingly, defendant did not waive the attorney-client privilege or work product protection for the deposition questions at issue.

2.     *The attorney-client privilege*

As to defendant's assertion of the attorney-client privilege, I have already ruled in this case that the privilege protects communications made by employees of the client when the client's attorney is interviewing those employees for the purpose of rendering legal services to the client. Banks v. Senate Sergeant-at-Arms, 222 F.R.D. 1, 3 (D.D.C. 2004) (citing Evans v. Atwood, 177 F.R.D. 1, 3 (D.D.C. 1997)).  Therefore, any question in which plaintiff asks the employee what she told counsel during an interview or a deposition preparation session seeks privileged information.

Under this rubric, the following questions were unquestionably objectionable and the attorney-client privilege properly claimed:

| No.[1] | Question | Ruling |
|---|---|---|
| 2 | Did the attorneys tell you that if you have a conflict of interest at the Sergeant-at-Arms, that someone else could represent you? | Attorney-client privileged because, if answered in the affirmative, would disclose that attorney and client discussed this topic and client would expect such a communication to be confidential. |
| 12 | And did you tell [the attorney] that [S.R.] believed Hispanics were subservient? | Attorney-client privileged because it specifically demanded to know what an employee of the client told a lawyer in confidence. |
| 13 | Did you tell [the attorney] that [S.R.]'s first four ... four of his first five hires were Hispanic people? | Same |
| 14 | When you met with [the attorney], did you tell her that you had conversations with [K.C.] concerning discrimination? | Same |

[1] The numbers in this column correspond to plaintiff's numbering of the questions in his cross-motion.

| 15 | When you met with [the attorney], did you tell her that you knew why Mr. Banks had been terminated? | Same |
|----|----|----|
| 16 | Did you talk about Mr. Banks? | Same |
| 24 | What do you recall discussing with the attorneys? | Same |
| 25 | Did you tell the attorneys that [M.K.] stated Hispanics were subservient? | Same |
| 26 | Did you tell the attorneys that it's the consensus of the Sergeant-at-Arms employees that [S.R.] was a racist? | Same |
| 27 | Did you tell the attorneys that [M.K.] believes [S.R.] discriminated in favor of Hispanics in hiring? | Same |
| 28 | Did you tell the attorneys that [M.K.] stated that Hispanics were subservient? | Same |

### 3.    *The Work Product Doctrine*

The application of the work product doctrine to the deposition questions at issue is slightly more complicated if one looks at the questions superficially, as plaintiff argues, asking only whether an individual question in itself threatened the disclosure of an attorney's mental processes or his trial strategy.  Such an atomistic approach loses sight of the forest for the trees.  The questions and comments by a lawyer and his client's employees as they discuss legal and factual questions that have arisen in litigation or prepare for a deposition are at the heart of a lawyer's preparation and surely the attorney must be permitted to do that in peace, free from the intrusion of opposing counsel.  As the Supreme Court stated in Hickman v. Taylor, 329 U.S. 495, 510-11 (1947):

5

> [A] lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients.  In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.  This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

Id.  By his questions, plaintiff's counsel is trying to force his opponent to recreate the conferences that defendant's counsel held with their client's employees as they prepared the defense.  That such conferences are inviolate from such intrusion goes without saying.

Under this rubric, the following questions were unquestionably objectionable and work product protection was properly claimed:

| No. | Question | Ruling |
|-----|----------|--------|
| 1 | Did [the attorney] ever tell you that there was a file with all these documents in it that we were going to be talking about today? | Work product; would disclose how the attorney prepared the witness for the deposition |
| 3 | And the attorneys never told you that this was a deposition about a file that was being kept by Jean McComish? | Work product; would disclose what topics attorneys discussed with witness during preparation |

| 4 | [The attorneys] told you you had been accused? | Work product because it indicates a topic that the attorneys considered important and relevant during the preparation of the witness |
|---|---|---|
| 5 | Did [the attorneys] tell you why you were meeting with them? ... What did they tell you? | Work product because it specifically demanded to know what topics the attorneys wished to address in preparation, thereby disclosing what the attorneys thought was important and relevant |
| 6 | Why did [the attorneys] tell you they were meeting with you? | Same |
| 8 | Did [the attorney] ever tell you not to talk to Roy Banks' counsel? | Work product because it would disclose a strategic decision made by counsel as to how to deal with opposing counsel |
| 9 | Did [the attorney] tell you that there was [sic] allegations that Banks had stated that [S.R.] preferred to hire Hispanics? | Work product because it indicates a topic that a lawyer considered important during the preparation of the witness |
| 10 | Prior to meeting with Jean McComish, did [the attorney] tell you why Mr. Banks was terminated? | Same |
| 11 | And did [the attorney] tell you why she wanted to meet with you? | Work product because it because it specifically demanded to know what topics the attorney wished to address in preparation, thereby disclosing what the attorney thought was important and relevant |
| 17 | What did the attorneys tell you in the interviews? | Work product because it specifically demanded to know what topics the attorney thought important |
| 23 | Did any attorneys tell you that there was [sic] allegations that Banks had stated that [S.R.] preferred to hire Hispanics? | Work product because it discloses a topic that the attorneys thought important |

4.      *The Court's Discretion Under Rule 26(b)(2)*

There are six additional deposition questions at issue that, although they would not reveal

confidential client communications or defendant's attorneys' mental processes or trial strategy, would be of too little value to this litigation for the court to compel their responses.  Under Rule 26(b)(2), the court may limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).  This court finds that the usefulness of the answers to the questions provided in the chart below would add nothing to the resolution of the claims in this lawsuit, especially in light of the time already spent on discovery and the expense and inconvenience that would be created by resuming the depositions.  Therefore, the court will not compel M.K. or K.C. to answer them.

| No. | Question |
|-----|----------|
| 7 | And did [the attorney] tell you that Roy Banks had sued the Sergeant-at-Arms? |
| 18 | Did the attorneys tell you that Mr. Banks had sued the Sergeant-at-Arms? |
| 19 | [Did you meet with the attorney][c]oncerning Roy Banks? |
| 20 | Did you meet with [the attorney] concerning Roy Banks? |
| 21 | And did those attorneys tell you that Roy Banks had sued the Sergeant-at-Arms? |
| 22 | Did [the attorneys] tell you that you could answer their questions? |

**C.      Plaintiff's Motion for Clarification and Reconsideration of the Court's May 9, 2005 Order**

On May 3, 2004, pursuant to a motion to compel filed by plaintiff, this court ordered defendant to submit, for *in camera* review, 400 documents for which it was asserting attorney-client privilege and/or work production protection. <u>Banks v. Senate Sergeant-at-Arms</u>, 222

F.R.D. 7, 21 (D.D.C. 2004).  After reviewing the documents, on May 9, 2005, this court

sustained defendant's objections as to some of the documents, but overruled defendant's

objections as to others, ordering those documents to be produced.  Banks v. Senate Sergeant-at-

Arms, 228 F.R.D. 24, 27-33 (D.D.C. 2005).  Plaintiff now moves this court to clarify and

reconsider its May 9, 2005 order on the ground that the order did not address documents

referenced on defendant's March 23, 2004 privilege log.  Plaintiff's Amended Motion for

Clarification and Reconsideration of Magistrate's May 9, 2005 Memorandum Order for

Defendant to Produce Documents ("Pl.'s Mot. for Clar.") at 1.  A week after plaintiff filed his

motion, defendant called the court to inform it that it had inadvertently failed to submit for *in

camera* review its March 23, 2004 privilege log and the documents referenced therein.

Defendant's Opposition to Plaintiff's Amended Motion for Clarification and Reconsideration of

Magistrate's May 9, 2005 Memorandum Order for Defendant to Produce Documents ("Def.'s

Opp'n") at 3.

Plaintiff's motion for clarification and reconsideration is really a motion for sanctions.

Specifically, plaintiff is asking the court to find that, because defendant failed to submit *all* of the

documents ordered to be submitted, Defendant has waived any privilege as to those documents

and they should be ordered produced.[2]  Plaintiff's Reply in Support of His Motion for

Clarification and Reconsideration ("Pl.'s Reply in Supp. of Mot. for Clar.") at 5.  Plaintiff argues

---

[2] In his amended motion for clarification and reconsideration, plaintiff argues that
defendant waived any privilege for the documents on March 30, 2004 and June 2, 2004 privilege
logs because plaintiff never received copies of those logs. Pl.'s Mot. for Clar. at 6.  However, at
the start of that same amended motion, plaintiff explains that the reason he amended his original
motion was to reflect that he was mistaken in his claim that he had not received those logs. Id. at
1-2.  Accordingly, the court disregards plaintiff's argument for waiver based on lack of receipt of
the March 30, 2004, and June 2, 2004, privilege logs.

that waiver is an appropriate sanction because (1) defendant failed to comply with the court's

order and (2) plaintiff has been prejudiced be defendant's error. Id. at 3-5.

### 1.    Violation of the May 3, 2004 Order

Plaintiff argues that defendant should be ordered to produce the documents not previously

submitted because defendant failed to comply with a court order. Id. at 4.  District courts are

entrusted with broad discretion regarding whether to impose sanctions and the nature of the

sanctions to be imposed. Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996);

Steffan v. Cheney, 920 F.2d 74, 75 (D.C. Cir. 1990).  However, the court's discretion is not

without limits, and this Circuit has emphasized that any sanction awarded must be proportional

to the wrongs done. Bonds, 93 F.3d at 808 ("The central requirement of Rule 37 is that 'any

sanction must be 'just,' which requires in cases involving severe sanctions that the district court

consider whether lesser sanctions would be more appropriate for the particular violation.  The

choice of sanction should be guided by the 'concept of proportionality' between offense and

sanction." (internal citations omitted)).  This court does not believe that, as plaintiff suggests,

defendant's failure to comply with its order was intentional.  As defendant explains, its failure to

submit the March 23, 2004 privilege log and documents was due to an inadvertent error. Def.'s

Opp'n at 2-3.  Accordingly, the sanction of waiver for all of the documents referenced on

defendant's March 23, 2004 privilege log would be disproportionate its the offense.

### 2.    Prejudice

Plaintiff argues that he has been prejudiced because many of the documents listed on

defendant's March 23, 2004 privilege log were either created by or directed to one of defendant's

key witnesses, the former Director of Human Resources, Doug Fertig, and plaintiff did not have

10

these documents at the time Fertig was deposed. Pl.'s Reply in Supp. of Mot. for Clar. at 4-5.

Furthermore, Fertig has since passed away, and, therefore, plaintiff will never have the

opportunity to ask him about such documents. Id.

Contrary to plaintiff's assertion, even if defendant had submitted all of the documents to

the court for *in camera* review in a timely manner, plaintiff would not have been able to depose

Fertig on those documents.  First, the documents were ordered produced in May 9, 2005, Banks,

228 F.R.D. at 83, by which time Fertig had already passed away.  See Pl.'s Mot. for Clar. at 7 n.7

(Notice of Fertig's death was filed with the court in April 2005).  Second, because the court has

not yet reviewed the documents referenced on the March 23, 2004 privilege log (as they have not

yet been submitted), it is unknown whether or not the documents relating to Fertig even would

have been ordered produced.

Plaintiff also argues that he has been prejudiced by the resulting delay in the ultimate

resolution of his case. Pl.'s Reply in Supp. of his Mot. for Clar. at 3-4.  Specifically, plaintiff

claims that, due to his poor health, each delay decreases his chance of obtaining justice. Id.

Although defendant's failure to submit the documents may have contributed to delays in the

resolution of this case, plaintiff has not explained how defendant's failure to submit the

documents has created a unique delay as compared to the countless actions by *both* sides that

have already caused delays.  Instead of finding waiver, this court orders defendant to submit the

March 23, 2004 privilege log and documents referenced therein for *in camera* review no later

than ten days after the posting of this order.

**D.      Defendant's Motion for and Memorandum in Support of a Protective Order
and *In Camera* Review of Five Documents**

Defendant moved for a protective order for five documents (RB008476; RB008448;

RB008449; RB008488-90; and RB008483) that were ordered produced pursuant to the court's

May 9, 2005 order, which was previously discussed. Defendant's Motion for and Memorandum

in Support of a Protective Order and In Camera Review of Five Documents ("Def.'s Mot. for *In*

*Camera* Review").  For the five documents at issue, defendant asserted only work product

protection on its privilege log submitted to the court in July 2004.  After reviewing documents

submitted in July 2004 for *in camera* review, the court determined that the five documents at

issue are not work product and ordered them produced. Banks, 228 F.R.D. at 33.  Now, for the

*first time*, defendant claims that these five documents are protected by the attorney-client

privilege.

Defendant argues that its failure to originally designate the five documents as attorney-

client privileged was inadvertent. Def.'s Mot. for *In Camera* Review at 2.  Moreover, defendant

asks the court to find that it did not waive the privilege because, although its privilege log only

expressly asserted work product protection, the description of the documents on the log indicated

that they are attorney-client privileged.[3]  Id.  In response, plaintiff argues that defendant's

assertion of the attorney-client privilege is untimely and, therefore, has been waived.  Plaintiff's

Opposing Points and Authorities ("Pl.'s Opp'n") at 1.

---

[3] Specifically, on defendant's privilege leg, RB008476 was described as an "E-mail re
legal advice requested and rendered in anticipation of litigation"; RB008448 and RB008449 were
described as an "E-mails re legal advice requested and rendered"; RB008488-90 was described
as a "Memo re legal advice rendered" and; RB008483 was described as an "Email re legal advice
requested and rendered."  Def.'s Mot. for *In Camera* Review at 2.

12

"[I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels – if not crown jewels." <u>In re Sealed Case</u>, 877 F.2d 976, 980 (D.C. Cir. 1989).  The attorney-client privilege applies only if it has been claimed and not waived by the client. <u>In re Sealed Case</u>, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  Failure to assert the privilege within a reasonable time, without a showing of good cause, constitutes a waiver of the privilege. <u>Blumenthal v. Drudge</u>, 186 F.R.D. 236, 240 (D.D.C. 1999).  This court has found that, where a party fails to assert a privilege on its privilege log or in any of its pleadings, the privilege is waived. <u>Carey-Canada v. California Union Ins. Co.</u>, 118 F.R.D. 242, 248-49 (D.D.C. 1986).

Defendant did not assert the privilege within a reasonable time: it did not claim the attorney-client privilege until after the close of discovery, after it submitted its privilege log and the documents referenced therein to the court for *in camera* review, and after the court ordered the documents produced.  Furthermore, defendant has made no attempt to show good cause for its failure, asserting only that it was due to an inadvertent error.  Accordingly, this court finds that defendant has waived its attorney-client privilege for the five documents and orders defendant to produce them to plaintiff within ten days of this opinion.

### E.    Plaintiff's Rule 37 Motion to Compel Production of Documents

Plaintiff moved for an order compelling defendant to produce two documents identified on a recent privilege log as work product. <u>Plaintiff's Rule 37 Motion to Compel Production of Documents</u> (Pl.'s Mot. to Compel") at 1.  The two documents were described on defendant's privilege log as handwritten notes by defendant's Senior Human Resources Administrator, Jean McComish, reflecting communications from defendant's attorney, Brenda Pence. <u>Id.</u>, Exh. A.

Plaintiff argues that the two documents were not prepared in anticipation of litigation and,

therefore, are not work product. Id. at 1.  Plaintiff's logic is that, because defendant has

previously conceded the June 2003 investigations were not conducted in anticipation of litigation

and the two documents were found in the June 2003 investigation file, the two documents are

necessarily not work protect.  Plaintiff's Reply in Support of His Rule 37 Motion to Compel

Production of Documents ("Pl.'s Reply in Supp. of Mot. to Compel") at 3-7.  Furthermore,

plaintiff argues that, even if the documents are work product, he has a substantial need for the

documents because they will reveal critical information about the purpose of the June 2003

investigations. Pl.'s Mot. to Compel at 8.  Specifically, plaintiff *hopes* that McComish's notes

will reveal whether defendant knew, prior the June investigations, about an alleged

discriminatory statement by M.K. Id.  This information is assertedly important to plaintiff

because it would support his argument that defendant's stated reason for terminating him was a

pretext for discrimination. Id.

Defendant responds that the documents were not created as part of the June 2003

investigations, but rather, reflect information learned by defendant's counsel during a *separate*

investigation related to plaintiff's complaints. Defendant's Opposition to Plaintiff's Rule 37

Motion to Compel Production of Documents ("Def.'s Opp'n") at 4.  Specifically, the documents

"reflect information learned by [d]efendant's counsel from a potential witness in the course of an

investigation conducted in anticipation of litigation with [p]laintiff and for the purpose of

rendering legal advice to [d]efendant regarding [p]laintiff's [c]omplaints," and would, therefore,

disclose counsel's mental impressions, conclusions, opinions, or legal theories. Id. at 3.

Defendant further argues that plaintiff does not have a substantial need for the documents

because he has already received extensive discovery regarding the June 2003 investigations,

including the interview notes and deposition testimony. Id. at 6.

        *1.*    *Analysis*

      Rule 26 of the Federal Rules of Civil Procedure protects from discovery documents and

other tangible things prepared in anticipation of litigation or for trial by a party or that party's

representative. Fed. R. Civ. P. 26(b)(3).  While such work product may lose protection upon a

showing of substantial need and the inability to secure a substantial equivalent, the "mental

impressions, conclusions, opinions or legal theories of an attorney" are not to be disclosed. Id.

"Questions of a witness that would disclose counsel's mental impressions, conclusions, opinions

or legal theories may be interdicted to protect 'intangible work product.'" Banks v. Senate

Sergeant-at-Arms, 222 F.R.D. 1, 5 (D.D.C. 2004).

      Although the fact that the two documents were located in a file relating to the 2003

investigation would tend to suggest that they were created in the course of those investigations,

that is not necessarily true.  Defendant claims that the notes were taken during a telephone call

from counsel concerning information learned from a potential witness in the present case and not

as part of the June 2003 investigation.  If that is true, then, because an attorney's interviews with

witnesses are work product, the notes would most likely reflect work product.  However, the

court does not need to decide at this time whether the notes reflect work product because

defendant has offered to submit them for *in camera* review along with the documents

inadvertently not submitted in response to the court's May 3, 2004 order. Defendant's Opposition

to Plaintiff's Amended Motion for Clarification and Reconsideration of Magistrate's May 9,

2005 Memorandum Order for Defendant to Produce Documents at 3 n.4.  Accordingly, defendant

is ordered to submit the two documents with McComish's notes to the court and the court

reserves determination of work product protection until after it has reviewed the documents *in camera*.

With regard to plaintiff's assertion that he has a substantial need for the notes, plaintiff's *hope* that the two documents *may* reveal whether defendant knew about M.K.'s alleged statement prior to the investigations is speculative at best.  However, the court will reserve its determination as to whether plaintiff has a substantial need so as to overcome work protect protection until after it has reviewed the documents *in camera*.

### F.      Plaintiff's Unopposed Motion for Clarification

On May 5, 2002, this court granted <u>Defendant's Emergency Motion to Seal Certain Documents Attached to Plaintiff's Notice of Filing Concerning Discovery and Sanctions Pursuant to the Court's February 16, 2005 Order</u> ("Def.'s Emergency Mot.").  In its emergency motion, defendant requested that certain documents be sealed because those documents contain personnel and disciplinary information regarding employees who are not parties to this action and, therefore, are subject to a protective order entered into between the parties. Def.'s Emergency Mot. at ¶ 2.  Because four related filings by plaintiff revealed the information defendants sought to be sealed, the court struck those filings and ordered plaintiff to refile them under seal.  In addition, to create a public record, the court ordered plaintiff to electronically re-file redacted versions of the four filings, replacing certain employee names with initials.  Plaintiff has since filed redacted versions of the four filings, but not any of the attachments to the same. In his present motion, plaintiff asks the court to reconsider its order on the ground that redacting the employees names in the attachments would be unduly burdensome.  Plaintiff requests that the court modify its order and require him to redact only the attachments that relate to defendants

June 2003 investigation.

To allow plaintiff to redact the names in only the attachments relating to the June 2003 investigations, while allowing the full names to remain in other attachments, would defeat the purpose of redacting them in the first place.  Furthermore, this court has reviewed the attachments to be redacted, which were filed under seal, and finds that they are not so voluminous or require such extensive redaction that it would be unduly burdensome for plaintiff. Accordingly, plaintiff will not be relieved of his obligations under the May 5, 2005 order.

> ### G.    Plaintiff's Motion for Leave to File His Supplemental Filing Nunc Pro Tunc

On May 18, 2005, plaintiff filed a <u>Motion Pursuant to LCvR 72.2 for Reconsideration</u> of this magistrate judge's May 5, 2005 order denying in part plaintiff's motion for discovery and sanctions.  On July 30, 2005, after an opposition and reply had been filed, plaintiff filed a <u>Motion for Leave to File His Supplemental Filing Nunc Pro Tunc</u> in support of his motion for reconsideration.  Three weeks later, on August 21, 2005, Judge Kennedy denied plaintiff's motion for reconsideration of this magistrate judge's denial of discovery sanctions.  Accordingly, plaintiff's <u>Motion for Leave to File His Supplemental Filing Nunc Pro Tunc</u> is denied as moot.

## III.    CONCLUSION

For the above-stated reasons, <u>Defendant's Motion for and Memorandum in Support of a Protective Order</u> will be granted, <u>Plaintiff's Cross-Motion to Compel and Opposition</u> will be denied, <u>Plaintiff's Amended Motion For Clarification and Reconsideration of Magistrate's May 9, 2005 Memorandum Order for Defendant to Produce Documents</u> will be denied, <u>Defendant's Motion for and Memorandum in Support of a Protective Order and *In Camera* Review of Five Documents</u> will be denied, <u>Plaintiff's Rule 37 Motion to Compel Production of Documents</u> will

be stayed pending *in camera* review of the documents, <u>Plaintiff's Unopposed Motion for</u>

<u>Clarification</u> will be denied, and Plaintiff's <u>Motion for Leave to File His Supplemental</u>

<u>Memorandum - Nunc Pro Tunc</u> will be denied as moot.  An order accompanies this

memorandum opinion.

 

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: